## CULLEN v. RILEY et al.

Bill to quiet title and compel a conveyance of real estate upon the following facts: In 1833, M. C. and J. M. were possessed of the premises as mining land. At the death of M. C., in 1837, all his interest passed by his will to his brother C., and his nephew, M. R. In 1839, C. was, by the sheriff, put in possession of the estate devised to him by M. C. In 1845, M. R. sold and conveyed to C. all his interest in the estate of M. C., including the premises in controversy, and covenanted that the same was free from all incumbrances. In November, 1845, C. applied at the land office, to enter the land in controversy, and was informed that a pre-emption had been proved up, in the names of J. R.—the father of M. R.,—and J. M., and it could be purchased and entered only in the names of the persons to whom the certificate of pre-emption had been entered. C. then, with J. M., paid the purchase money, and took the patent in the names of J. R. & J. M., and shortly after conveyed his interest in the land to M. B. C. Possession of the premises was in M. C. and J. M. from 1833, to 1837. After the death of M. C., possession was in M. R. and J. M., until 1839, when C. was put in possession of his interest in the land, by the sheriff, from which time possession has been in the complainant and those under whom he claims, and which possession has been open, notorious, continued, exclusive, and adverse. Before C. came to the country, in 1839, and on the strength of the improvements made by M. C. in his life-time, M. R., without authority or permission from M. C. procured the certificate of pre-emption to be entered in the names of J. R. and J. M. J. R.—the father—never came to the United States, but lived and died in Ireland. The patent issued in the name of J. R., in 1849, before which time J. R. had deceased; *Held,* That by the conveyance of M. R. to C. the equitable title of the former in the premises, passed to C.; that J. R. held the legal title in trust for M. R.;

that by the death of J. R. the legal title was cast upon his heirs at law; and that the said heirs should convey the title to the complainant, M. B. C. under his conveyance from C.

*Appeal from the Dubuque District Court.*

MONDAY, APRIL 4.

This is a proceeding in equity, to compel a conveyance of an interest in certain real estate, and quiet the title of the complainant. The pleadings and the facts are fully stated in the opinion of the court. The complainant appeals.

*Platt Smith* and *J. S. Blatchley*, for the appellant.

*F. E. Bissell*, for the appellees.

STOCKTON, J.—The testimony in this case satisfactorily establishes the fact, that from the year 1833, Matthew Cullen and John McCollins was possessed of the premises now in controversy, as mining land. At the death of Cullen, in 1837, all his interest, passed by his will, to his brother, Michael Cullen, and his nephew, Michael Riley. In 1839, Michael Cullen settled at Dubuque, and was, by the sheriff, put in possession of the estate devised to him by his brother. In 1845, Michael Riley, in consideration of a release from Michael Cullen of all claim upon him as administrator of Matthew Cullen, sold and conveyed to Michael Cullen all his interest in and to the estate which was of the said Matthew Cullen, deceased, including the premises in controversy, and covenanted with him that the same was free of all incumbrances arising by power under him.

In November, 1845, Michael Cullen applied to enter, at the government land-office in Dubuque, the lots in controversy. He was informed that a pre-emption to the lots had been proved up, at said office, in the names of John Riley and John McCollins; and that they could be pur-

chased and entered only in the names of the persons to whom the certificate of pre-emption had been issued. He then, with John McCollins, paid the purchase money, and the patent from the United States afterwards issued in the names of John Riley and John McCollins, of Dubuque county. Shortly after the payment of the purchase money at the land office, Michael Cullen conveyed all his interest in the premises to the complainant, Matthew B. Cullen.

Possession of the premises was in Matthew Cullen and McCollins, from 1833 to 1837; after the death of Cullen, possession was in Riley and McCollins, until in 1839, when Michael Cullen was, by the sheriff, put in possession of his interest in the lots. From that time until the commencement of this suit, possession has been in the complainant, and those under whom he claims. This possession is alleged to have been, during all this time, open, notorious, continued, exclusive, and adverse to all other persons.

It is alleged, in complainant's bill, that before Michael Cullen came to the country, on the strength of the improvements made upon the premises by Matthew Cullen, in his life-time, and which it is alleged, were of a valuable and substantial character, entitling him, his heirs, and assigns, to a pre-emption, by virtue of the act of Congress, Michael Riley, without authority or permission from said Michael Cullen, procured a certificate of pre-emption to the premises in dispute, to be issued by the government land officers in the name of John McCollins and John Riley. This averment is substantially admitted in the answer of defendants, and they seek to avoid the effect of the same, by the allegation that McCollins and Riley were the owners of the claim, including the premises now in dispute, before the date of the will of Matthew Cullen; that their improvements on the premises entitled them to a pre-emption thereon; and that, being in possession, the said Michael Riley, in the expectation that his father, John Riley, was about to emigrate to the country, and being desirous to procure him a place on which to reside, had the certificate

of pre-emption for said lot, to be issued in the name of his father, the said John Riley, jointly with the said McCollins.

To sustain this allegation of the answer, there is no proof whatever. There is nothing in the testimony to show that Michael Riley had any interest in the claim, or any possession thereof, previous to the death of Matthew Cullen. On the contrary thereof, all the testimony shows that it belonged to Cullen and McCollins; that they made what improvement was upon it; and that all the interest of Michael Riley in the premises was derived from the will of his uncle.

At what time the certificate of pre-emption was issued, is not made to appear; but it was before Michael Cullen came to the country, in 1839. Possession of Cullen's interest in the property was given to him during that year, without any objection on the part of Riley. This possession is retained by Cullen until 1845, when Riley conveys to him all his interest in the premises, still without any information being given to him, that a pre-emption had been granted upon the lot, in the name of John Riley, his father. This John Riley never came to the United States, but lived and died in Ireland. Under the circumstances, it seems to us that the title to the lots, held by him, was in his name, merely as the trustee of his son, Michael. Under the will of Matthew Cullen, Michael Riley took the same interest in the premises in dispute as Michael Cullen. He takes advantage of the absence of Cullen, to have a pre-emption to the lots proved up, in the name of his father, who was in Ireland, and had no interest therein whatever. And after thus, as he supposes, placing the title in his father, he conveys to Michael Cullen, for a good consideration, the interest derived under the will of Matthew Cullen, and covenants with him, that the same is free of all incumbrances done or suffered by himself.

We think, that by this conveyance, the equitable title to the premises of Michael Riley, derived from the will of Matthew Cullen, became vested in Michael Cullen, and he

was entitled to compel a conveyance from John Riley, of whatever title he held as the trustee of Michael Riley. The legal title did not pass from the United States until the patent issued in 1849. John Riley being dead, at this time, the title was cast upon his heirs at law. The defendants claim to be three of these heirs, and, as such, set up title to the property, in opposition to the complainant, who claims under his conveyance from Michael Cullen. We think the defendants are in no better position than their ancestor. They seem not to have known anything of the state of the title of the premises, from the time of their arrival in the country in 1845, to near the time of the commencement of this suit, in 1855. They have never had possession of the premises, or any part thereof. Neither they, nor their ancestor, made any improvement upon the lots, nor paid any portion of the purchase money. The title held by them, they held as the trustees of Michael Riley, and they should have been required by the decree of the district court to surrender the same to the complainant.

The decree of the district court will be reversed, and the cause remanded, with instructions to render a decree in favor of complainant, according to the prayer of his bill, quieting his title to the premises, and against the defendants, for a conveyance by them to complainant, of all their interest in the lots.

Decree reversed.